RECEIVED
IN ALEXANDRIA, LA
SEP 25 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **EDWARD RICHARDSON, III, ET AL** | **CIVIL ACTION NO. 05-0849-A** |
| -vs- | **JUDGE DRELL** |
| **USA, ET AL** | **MAGISTRATE JUDGE KIRK** |

### R U L I N G

#### I. Background

The suit now before the Court arose on February 28, 2004 when a federal employee, Zachary N. Balancier, rear-ended a van driven by plaintiff Edward Richardson, III, injuring Mr. Richardson and his son Colby. Mr. Richardson and his wife, Aimee Huesmann Richardson, brought a tort suit against Mr. Balancier and the United States of America on their own behalf and on behalf of their minor son Colby. Mr. Balancier was eventually dismissed from the case, leaving the United States as the sole defendant. The Court has jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). This ruling is issued after trial on the merits.

Mr. Richardson complains of neck, back, and shoulder injuries, with pain radiating into his extremities. Mrs. Richardson alleges loss of services, hedonic damages, loss of enjoyment of life, and mental anguish and distress. Finally, Mr.

and Mrs. Richardson seek on behalf of their minor son Colby Richardson damages for an injury to his right leg caused by the accident.

Under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., the law to be applied is the relevant state tort law. For negligence claims like the one underlying this case, Louisiana uses duty-risk analysis, which the Louisiana Supreme Court summarizes as follows:

> The duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability under LSA-C.C. art. 2315. This approach provides an analytical framework for evaluation of liability. One analysis requires proof by the plaintiff of five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability.

Lemann v. Essen Lane Daiquiris, Inc., 923 So. 2d 627, 632-33 (La. 2006) (citations omitted). The analysis in this case is greatly simplified, since the defendant does not dispute liability, only the extent of damages. Thus, we turn now to the damages element.

## II. Edward Richardson, III

Since Mr. Richardson's injuries account for the vast majority of damages sought, the Court turns first to them. This case exemplifies the inherent difficulty of trying to verify and quantify physical injuries by slogging through the

2

terminological morass of physicians' opinions. In making its determination, the Court has considered the speculations and conclusions of all the physicians and has given due deference to those of the treating physicians. However, experts on both sides of this lawsuit were in rough agreement as to the types of injuries suffered, differing mostly with respect to the names and extent of those injuries. Thus, where possible, the Court will adopt the terminology of the most objective physician in this case, the independent medical examiner, Dr. Thomas J. Montgomery, M.D.

To summarize the injuries we believe are important to this decision, the court finds substantiation of a disc herniation at C3-4, though there is slight variation in that opinion. Everyone also agrees that there are problems at C4-5, without agreeing on the full significance of the findings; we find that there is a possible herniation on the right side at C4-5 with some stenosis. Physicians vary dramatically in their assessment of C5-6, but we find that there is at least some stenosis there. Finally, there is at least a disc protrusion at L3-4, as well as radicular changes at L5 & S1. On the whole, then, there is at least one cervical herniation, other cervical problems, and several lumbar problems.

The Court also notes at the outset that Mr. Richardson had several preexisting conditions, most significantly diabetes, hypertension, and obesity. All three of these create significant obstacles to future treatment and surgery, as further discussed below. Moreover, Mr. Richardson has diabetic neuropathy,

3

which contributes to the sensations he feels in his extremities, though Dr. Montgomery stated that this condition may have been asymptomatic prior to but exacerbated by the accident. (Def. Exh. 3). Although no physician could determine with certainty the precise cause of the sensations in Mr. Richardson's extremities, Dr. Montgomery stated that he believed the problems in his upper extremities to be more than likely caused by the accident and the problems in the lower extremities to be more than likely caused by the diabetic neuropathy. (Def. Exh. 3). Thus, the Court finds that at least some of Mr. Richardson's pain in his extremities was caused by accident-related injuries.

Soon after the accident, Mr. Richardson visited the emergency room and since then has regularly visited several physicians, primarily Dr. Darron C. McCann, M.D., a family practitioner, and Dr. Louis Blanda, Jr., an orthopedic surgeon. He saw Dr. Steven Staires, an interventional pain management specialist, on two occasions but failed to follow through with Dr. Staires's pain management treatment and did not return to for his next scheduled appointment. (Pl. Exh. B). Dr. McCann stated that Mr. Richardson is now in the maintenance phase of treatment, which involves primarily pain management, opposed to the active treatment phase (Pl. Exh. T-1); and Dr. Blanda stated that he believes that Mr. Richardson has plateaued and will get neither better nor worse absent other circumstances (Pl. Exh. A-1). The Court accepts these assessments.

Prior to the accident, Mr. Richardson worked in the surveillance department of the Paragon Casino Resort in Marksville, Louisiana, which involved 12-hour shifts of sitting and monitoring video feeds. He continued to work for approximately a year after the accident but took a medical leave of absence beginning on approximately March 2, 2005 pursuant to Dr. McCann's "no work" order. He was discharged by Paragon on June 25, 2005 for failure to return from the leave, and he has not worked since. In the meantime, though Mr. Richardson has been less active than before, he has been able to hunt frequently, using a four-wheeler to get around; to mow the yard using a riding lawnmower; and occasionally to play saxophone on stage for several hours at a time. As will be further discussed below, Mr. Richardson's doctors generally agree that he should be able to go back to some kind of job.

Having determined the extent of Mr. Richardson's injuries, the Court now turns to the calculation of damages.

### A. Past Medical Expenses

Mr. Richardson has presented evidence of past medical expenses totaling $51,706.00 (Pl. Exh. P). After review, it appears that all of these charges are related to the injuries at issue. Although the Court believes that some of these charges were on the upper end of the acceptable range, we find that they constitute proper treatment of Mr. Richardson's injuries and are not unreasonable. Thus, we will award $51,706.00 for past medical expenses.

## B. Future Medical Expenses

Mr. Richardson seeks a total of $194,501.32 for future medical expenses (Pl. Exh. Q), the entire amount related to possible surgical procedures that can be summarized as discectomies and fusions in the neck and back.

The Louisiana Third Circuit Court of Appeal sets out the following requirements for an award of future medical expenses:

> Future medical expenses, like any other damages, must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred. Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. An award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award.

Roberts v. State, 776 So. 2d 519, 526 (La. App. 3 Cir. 2000), writs denied, 784 So. 2d 644 (La. 2001) (quoting Veazey v. State Farm Mut. Auto. Ins., 587 So. 2d 5, 8 (La. App. 3 Cir. 1991)). See also Stiles v. K Mart Corp., 597 So. 2d 1012, 1013 (La. 1992) ("When the record establishes that future medical expenses will be necessary and inevitable . . .") (emphasis added).

In this case, the record does reflect, in detail, a fairly precise valuation of future medical expenses, at least insofar as estimates of future services may be exact. However, it is fairly clear that surgery is neither necessary nor inevitable. Although surgery may be needed to improve Mr. Richardson's condition, both Dr. McCann and Dr. Blanda agree that he will get no worse without the surgery (Pl. Exhs. A-1 and T-1), and Dr. Blanda stated that the best course of treatment is

medication for the pain problems coupled with lifestyle changes (Pl. Exh. A-1). According to Mr. Richardson's testimony at trial, Dr. Blanda told him that there was only a 40 to 50 percent chance of the chances of the surgery doing any good.

Furthermore, due to the significant risks posed by Mr. Richardson's obesity, diabetes, and hypertension, Dr. Blanda recommends against having the surgery unless there is some later injury that makes it mandatory (Pl. Exhs. A-1 and A-2). If Mr. Richardson chooses to have an elective procedure, Dr. Blanda stated that he would have to lose a lot of weight, get his diabetes under control, and be cleared by his internist and cardiologist (Pl. Exh. A-2). At the time of trial, there was no evidence that any of these conditions would be met. Most significantly, Mr. Richardson himself is clearly hesitant to have the surgeries, given the risks involved, the probabilities of improvement, and the diminished range of motion after even a successful procedure.

The Court finds that it is more probable than not that the future surgical procedures will not occur. Thus, Mr. Richardson has failed to satisfy the burden of proof under Louisiana law for these expenses. Thus, we will award no damages for future medical expenses relating to the surgeries.

The evidence submitted in support of future medical expenses relates only to these surgical procedures, but it is clear from the record that Mr. Richardson will be on a conservative pain management treatment plan for the foreseeable future. The Louisiana Supreme Court has stated:

> When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required. La. Code of Civ. Proc. art. 2164.

Stiles v. K Mart Corp., 597 So. 2d 1012, 1013 (La. 1992).

It now falls to the Court to determine an amount on which reasonable minds could not disagree. Since Mr. Richardson failed to maintain his treatment plan with the interventional pain management specialist, Dr. Staires, and said that the treatment gave him little benefit, we will not award any expenses for specialist care.

Instead, we will award a reasonable amount for periodic office visits to a general practitioner, plus a reasonable sum for pain medication. We will further adopt a 26-year period for care, which will cover Mr. Richardson approximately to age 65, past his work-life expectancy and at the typical threshold of government prescription benefits. Dr. McCann, family practitioner, stated that he charged between $85.00 and $150.00 for each of Mr. Richardson's office visits. (Pl. Exh. T-1). At trial, Dr. McCann testified that if a patient is not involved in litigation, the rate is about $100.00 per visit. Moreover, he testified that absent litigation he would be seeing Mr. Richardson only every two to three months because of the pain medication. Thus, the Court will allow four office visits a year

(i.e., once every three months) for 26 years at $100.00 per visit, for a total amount of $10,400.00.

The medication expenses are more difficult to verify and quantify, since Mr. Richardson has been taking a variety of medication, many of which are related to preexisting medical problems. We will allow expenses for Vicodin (hydrocodone) and ibuprofen prescriptions, as we may verify that these are used for general pain. We are unable to verify other medications as being primarily related to injuries from the accident. For instance, Cymbalta (duloxetine), which also appears in the routine records of prescription charges, is an antidepressant also used to treat symptoms of diabetic neuropathy and thus is probably not primarily related to the injuries from the accident.

Based on the last three months of prescription billing records supplied (for the months of October, November, and December 2006), the average monthly charge for Vicodin is $106.84, and the average monthly charge for ibuprofen is $36.75, for a total monthly prescription charge of $143.59. (Pl. Exh. P) Based on a relevant period of 26 years, we will allow $44,800.08 for future medication expenses.

Thus, we will award a total of $55,200.08 in future medical expenses, finding that this is an amount on which reasonable minds could not disagree.

### C. Past and Future Lost Wages

Pursuant to Dr. McCann's "no work" order, Mr. Richardson took a medical leave of absence on approximately March 2, 2005 and has not worked since then. On May 17, 2006, Paul A. Fontana, an occupational therapist, performed an eight-hour Functional Capacity Evaluation (FCE) on Mr. Richardson and opined that he could return to employment at a light work level and could sit or stand continuously for 30 minutes at a time, with a one to three minute break in between those periods; walk continuously for five minutes at a time; and alternately sit, stand, and walk for eight hours at a time. These recommendations are subject to the restrictions that Mr. Richardson may lift 20 pounds or more only occasionally but may lift 10 pounds or less frequently. (Def. Exh. 1). The Court notes that the FCE covered only one eight-hour period rather than a 40-hour period, but we believe that the opinions of other physicians lends substantial weight the findings.

At trial, Dr. McCann, the family practitioner, stated that he would defer to the opinion of Dr. Blanda, the orthopedic surgeon, but he believed that Mr. Richardson would be limited to a sedentary job and would have to be able to stretch or relieve himself every 30 minutes to an hour. In addition, Dr. McCann would not advise repetitive lifting of more than five pounds. Dr. Blanda stated that he believes that he can now work a light-duty eight hour per day job. (Pl. Exh. A-1).

The Court finds that Mr. Richardson was able to resume working on May 17, 2006 at the latest and could have entered a light-duty minimum wage job on that date. However, because there was evidence that Mr. Richardson could return to work at his pre-accident rate of pay after an 18-month period of retraining, the Court will allow lost wages for the retraining period as well. Relying on the opinion of economics expert Dr. G. Randolph Rice, Ph.D., the Court will award Mr. Richardson $46,595.00 in past lost wages and $18,520.00 in future lost wages.

### D. General Damages

Consistent with the extent of Mr. Richardson's injuries, the Court will award $110,000.00 in general damages, including pain and suffering.

### E. Property Damage

Based on essentially uncontroverted testimony, the Court will award $3,389.91 for property damage to Mr. Richardson's van.

### III. Aimee Huesmann Richardson

Based on testimony presented at trial, Mr. Richardson now performs fewer chores around the house and less yard work, so Mrs. Richardson has to perform more of these tasks now. There has also been more friction in the marriage due in part to decreased intimacy. Based on the record, the Court will award $3,000.00 for Mrs. Richardson's claims.

### IV. Colby Richardson

Colby Richardson was also involved in the accident and was thrown forward when his seatbelt came loose. He suffered a right leg injury and was treated by Dr. McCann for approximately three months, from March 2004 to June 2004. (Pl. Exh. R.). He continued to play baseball during the time of treatment. There was testimony that Colby periodically complains of pain, but based on the medical records, there is little to substantiate any further injury. The Court will award past medical expenses of $915.96 and general damages of $2,500.00.

## VI. Conclusion

For the foregoing reasons, the Court will award plaintiff Edward Richardson, III a total amount of ONE HUNDRED TEN THOUSAND DOLLARS AND NO/100 ($110,000.00) for general compensatory damages and ONE HUNDRED SEVENTY-FIVE THOUSAND FOUR HUNDRED TEN DOLLARS AND 99/100 ($175,410.99) for special compensatory damages as follows:

(1) for past medical expenses, FIFTY-ONE THOUSAND SEVEN HUNDRED SIX DOLLARS AND NO/100 ($51,706.00);

(2) for future medical expenses, FIFTY-FIVE THOUSAND TWO HUNDRED DOLLARS AND 8/100 ($55,200.08);

(3) for past lost wages, FORTY-SIX THOUSAND FIVE HUNDRED NINETY-FIVE DOLLARS AND NO/100 ($ 46,595.00);

(4) for future lost wages, EIGHTEEN THOUSAND FIVE HUNDRED TWENTY DOLLARS AND NO/100 ($18,520.00); and

(5) for property damage, THREE THOUSAND THREE HUNDRED EIGHTY-NINE DOLLARS AND 91/100 ($3,389.91).

The Court will also award plaintiff Aimee Huesmann Richardson a total amount of THREE THOUSAND DOLLARS AND NO/100 ($3,000.00) for general compensatory damages, including loss of services and hedonic damages. Finally, we will award plaintiff Colby Richardson the amount of TWO THOUSAND FIVE HUNDRED DOLLARS AND NO/100 ($2,500.00) for general compensatory damages and NINE HUNDRED FIFTEEN DOLLARS AND 96/100 ($915.96) for special compensatory damages.

SIGNED on this 25 day of September, 2007, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE